UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TOMMIE THREATT, # 106218, )| |
| )| |
| Plaintiff, )| Case No. 1:18-cv-96 |
| )| |
| v. )| Honorable Robert J. Jonker |
| )| |
| SCOTT HOLMES, M.D., et al., )| |
| )| |
| Defendants. )| |

_____)

## **REPORT AND RECOMMENDATION**

This is a civil rights action brought *pro* se by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff named as defendants Scott Holmes, M.D., Physician's Assistant Margaret Ouellette, Nurse Supervisor Kelley Stevens, and Deputy Warden Douglas Smith. He claims that Dr. Holmes and Ms. Ouellette violated his Eighth Amendment rights by declining to reorder Nephrocaps and by informing him that his request for the vitamins had not been approved, respectively.[1] Plaintiff claims that Deputy Warden Smith violated his First and Fourteenth Amendment rights on April 21, 2016, by ordering his transfer to another prison; and that Ms. Stevens violated his First Amendment rights by conspiring with Mr. Smith regarding the transfer. (Am. Comp, 11-14, ECF No. 15, PageID.97-100).

The matter is before the Court on a motion for summary judgment on the merits by defendants Holmes and Ouellette (ECF No. 26) and motions for summary

_____

[1] Nephrocaps is a brand name for a combination of B vitamins.

judgment by defendants Stevens and Smith based on the affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a) (ECF No. 33, 51).  Plaintiff opposes defendants' motions (ECF No. 44-45, 48, 56).  For the reasons set forth herein, I recommend that the Court grant defendants' motions for summary judgment, and that the Court dismiss plaintiff's claims against defendants Smith and Stevens without prejudice.  I further recommend that the Court enter judgment in favor of defendants Holmes and Ouellette on all plaintiff's claims.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of

evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' "  *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).  A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "[W]here the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and

quotation omitted).  In other words, the movant with the burden of proof " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056.  Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants Smith and Stevens have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, "or any other Federal law," must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile."  *Napier*

*v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[2]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure."  *Napier*, 636 F.3d at 224.  An argument that it would have been futile to file a grievance does not suffice.  Assertions of futility do not excuse plaintiff from the exhaustion requirement.  *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Preliminary Matters

Plaintiff's First Amended Complaint is not properly verified, as he has interjected the limitations that the allegations are made on information and belief.

---

[2]A copy of the policy directive is found in the record.  (*See* ECF No. 34-2, PageID.355-61).

(*See* Am. Compl., 16, ECF No. 15, PageID.102).  "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion*." Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (citation and quotation omitted). Accordingly, plaintiff's First Amended Complaint will not be considered as his affidavit in opposition to defendant's motion.  *See, e.g., Brown v. City of Grand Rapids*, No. 1:13-cv-964, 2016 WL 4920144, at *3 n.3 (W.D. Mich. June 13, 2016); *Naumovski v. Federal Nat'l Mort. Ass'n*, No. 15-11466, 2016 WL 949220, at *2 (E.D. Mich. Mar. 14, 2016).

## **Proposed Findings of Fact**

Plaintiff is an inmate held in the custody of the Michigan Department of Corrections.  He was housed at the Carson City Correctional Facility until his May 3, 2016, transfer to the Lakeland Correctional Facility.  (ECF No. 26-3, PageID.240).

### A.    Scott Holmes, M.D.

Scott Holmes, M.D., is a physician licensed in the State of Michigan.  He was a medical provider at the Carson City Correctional Facility (DRF) during the time period at issue.  (Holmes Aff. ¶¶ 1-2, ECF No. 26-3, PageID.237).

On May 29, 2015, plaintiff refused the insulin prescribed to treat his diabetes. When a patient like plaintiff refuses medical care for serious, chronic conditions like hypertension and diabetes, the refusal is documented in the patient's medical record using a "Release of Medical Responsibility for Medical Treatment" form (ROR).  Dr. Holmes placed a ROR in plaintiff's chart.  On August 4, 2015, Dr. Holmes reordered

Lisinopril for plaintiff.    (ECF No. 26-2, PageID.144-46; Holmes Aff. ¶¶ 3-4, PageID.238).

On January 14 and 21, 2016, Dr. Holmes documented plaintiff's refusals of insulin.   (ECF No. 26-2; PageID.149-51; Holmes Aff. ¶¶ 6-7, PageID.238).   On January 29, 2016, plaintiff refused his chronic care visit.   He indicated he did not want to be seen by Dr. Holmes and he refused to sign anything.   Dr. Holmes warned plaintiff that his health might decline if he continued to refuse to cooperate with the prison's health care program.   (ECF No. 26-2, PageID.153-58; Holmes Aff. ¶¶ 6-7, PageID.238).

On February 29, 2016, plaintiff refused to cooperate with normal medical visit procedures and he refused to sign a ROR.   (ECF No. 26-2, PageID.159-63; Holmes Aff. ¶ 9, PageID.238).   On March 3, 2016, plaintiff again refused his insulin.   (ECF No. 26-2, PageID.164-65; Holmes Aff. ¶ 10, PageID.238).

When a patient in plaintiff's condition refuses medical examinations and laboratory tests, a physician must weigh the risks of continuing the existing treatment without the benefit of those examinations and tests versus the risks of discontinuing treatment.   Protocol dictates that Dr. Holmes continue the medications that, if discontinued, would pose a risk of serious harm, but that he consider discontinuing medications that are unlikely to cause harm if discontinued or which are risky to continue without knowing what the patient's lab tests would show. (Holmes Aff. ¶ 14, PageID.239).

On March 17, 2016, Dr. Holmes renewed plaintiff's medically necessary

medications.  He declined to renew plaintiff's Nephrocaps until plaintiff cooperated with examinations and labs.  "Nephrocaps is a brand name for a combination of B vitamins (Vitamin B Complex)."  (Holmes Aff. ¶ 15, PageID.239).  Dr. Holmes believed that the risks of continuing plaintiff on Nephrocaps outweighed the risks of discontinuing them.  If plaintiff had agreed to lab tests and examinations, Dr. Holmes would have reordered Nephrocaps if they were appropriate in light of the test and examination results.  Plaintiff continued to refuse his accuchecks and insulin.  Dr. Holmes placed another ROR in plaintiff's chart and noted there were no changes. (ECF No. 26-2, PageID.166-68; Holmes Aff. ¶¶ 11, 15, PageID.238-39).

On March 29, 2016, Dr. Holmes noted that plaintiff continued to refuse treatment and noted that there were no changes.  (ECF No. 26-2, PageID.169-70; Holmes Aff. ¶¶ 16-17, PageID.239). On April 11, 2016 plaintiff received a mental health evaluation because he continued to refuse medical examinations, blood work, and insulin.  He indicated that he did not wish to be bothered by health care or mental health.  He related that he was dealing with his health issues in the courts.  (ECF No. 26-2, PageID.171-78; Holmes Aff. ¶ 19, PageID.239).  On April 18, 2016, plaintiff refused to enter the health care area for his chronic care appointment, examination, and treatment.  (ECF No. 26-2, PageID.179-80; Holmes Aff. ¶ 19, PageID.240).  Dr. Holmes treated plaintiff in a manner that, in his medical judgment, was appropriate. (Holmes Aff. ¶ 22, PageID.240).

B.    Margaret Ouellette, PA

PA Margaret Ouellette was a medical provider at the Lakeland Correctional Facility (LCF) during the relevant time period.  (Ouellette Aff. ¶¶ 1-2, ECF No. 26-4, PageID.241-42).  On May 10, 2016, PA Ouellette reviewed plaintiff's chart.  Plaintiff had an active order for Nephrocaps at that time, made by a physician at the Michigan Reformatory.  On May 11, 2016, PA Ouellette saw plaintiff on a chronic care visit for his diabetes mellitus.  She did not change plaintiff's order for Nephrocaps.  She reordered Nephrocaps for plaintiff through October 4, 2017.  (ECF No. 26-2, PageID.192-207; Ouellette Aff. ¶¶ 3-6, PageID.242).

On September 12, 2017, PA Ouellette submitted a request for several items for plaintiff, including Nephrocaps.  Later that day, a physician deferred the request for Nephrocaps.  On October 19, 2017, PA Ouellette informed plaintiff that the request for Nephrocaps had not been approved, and he refused to stay for his chronic care visit.  On October 26, 2017, plaintiff again refused the chronic care visit.  On November 27, 2017, plaintiff appeared, and he allowed his vital signs to be measured, but he left before his chronic care visit.  (ECF No. 26-2, PageID.211-24; Ouellette Aff. ¶¶ 7-12, PageID.242).

On February 1, 2018, plaintiff again refused his chronic care visit.  He indicated that he was refusing treatment until his "kidney pill" was reinstated.  PA Ouellette documented that Nephrocaps are for dialysis patients and that plaintiff had never been on dialysis.  PA Ouellette does not believe that Nephrocaps are medically necessary for plaintiff.  (ECF No. 26-2, PageID.225-30; Ouellette Aff. ¶¶ 13-14,

PageID.243; ECF No. 48-1, PageID.646; ECF No. 59-1, PageID.847).

On February 1, 2018, PA Ouellette submitted a consultation request to measure plaintiff's "25-hydroxy vitamin D level to check for a Vitamin D deficiency." Her request was approved later the same day. (ECF No. 26-2, PageID.231-35; Ouellette Aff. ¶ 15, PageID.243). On February 14, 2018, plaintiff refused a blood draw to check his Vitamin D level. (ECF No. 26-2, PageID.235-36; Ouellette Aff. ¶ 17, PageID.243).

PA Ouellette treated plaintiff in a manner that, in her medical judgment, was appropriate. (Ouellette Aff. ¶ 18, PageID.243).

### C.    Grievances

Plaintiff filed a number of grievances and pursued some of them through a Step III decision before he filed this lawsuit. (ECF No. 34-3, PageID.363-88). None of the grievances that plaintiff pursued through a Step III decision correspond to his allegations against defendants Smith and Stevens.

## Discussion

## I.    Eighth Amendment

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances,

including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard:  a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).  501 U.S. at 298.  "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence."  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id*. at 837.  "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful."  *Rhinehart v. Scutt*, 894 F.3d at 738.  The judgments of medical professionals are entitled to deference.  *Id*.  The subjective component presents "a high bar that a plaintiff must clear to prove an Eighth Amendment medical needs claim:  The doctor must have *consciously exposed* the

-12-

patient to an *excessive risk* of *serious* harm."  *Id.* at 738-39 (citation and quotation omitted).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.  The prison official's state of mind must evince deliberateness tantamount to intent to punish.  Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

"An inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.  Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim."  *Rhinehart v. Scutt*, 894 F.3d at 740 (citations and quotations omitted).  "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."  *Id.* at 744.  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.  *Id.* at 753.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs.  The record shows that Dr. Holmes and PA Ouellette treated plaintiff

and displayed no deliberate indifference.  The claims that defendants "should have" provided him with "different" medical care are, at best, state-law malpractice claims.

## II.    Exhaustion

Defendants Smith and Stevens have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered."  *Jones v. Bock*, 549 U.S. at 220.

Plaintiff argues that the Court should deny Nurse Supervisor Stevens's motion for summary judgment because his grievance against Dr. Holmes (Grievance No. 16-03-653-12F) regarding his decision to discontinue Nephrocaps should be deemed adequate to exhaust his administrative remedies.  Plaintiff argues that he was not aware of Ms. Stevens's actions when he filed his Step I grievance, at Step II that she was not authorized to provide the Step I response, and at Step III he wrote that he "receive[d] a retaliatory transfer." (ECF No. 45, PageID.562-68; ECF No. 45-1, PageID.579-87).

Plaintiff's grievance and related appeals did not properly exhaust his First Amendment claim against Nurse Supervisor Stevens.  Plaintiff concedes that she is not mentioned in his Step I grievance against Dr. Holmes.  Plaintiff's complaint at Step II was that defendant Stevens should not have been the author of the Step I response.  (ECF No. 45-1, PageID.583).  Plaintiff stated a conclusion at Step III that he had been subjected to a retaliatory transfer, without mentioning Stevens or providing any supporting facts.  (*Id.* at PageID.586).  Plaintiff's grievance against Dr.

Holmes did not provide fair notice of the claim that he is asserting against defendant Stevens.  *See Bell v. Konteh*, 450 F.3d 651, 653-54 (6th Cir. 2006).

Plaintiff's argument that it would have been futile to file a grievance against defendant Stevens because it would have been rejected as untimely[3] (ECF No. 45, PageID.568) fares no better.  Assertions of futility do not excuse the exhaustion requirement.  *See Napier*, 636 F.3d at 244.

Plaintiff argues that the Court should deny Deputy Warden Smith's motion for summary judgment because Attorney Joseph Ho made a "fraudulent" certification regarding his attempt to seek concurrence under W.D. MICH. LCIVR 7.1(d), and plaintiff needs more time to conduct discovery.  (ECF No. 56, Page ID.755-59).

The  Court  considered  plaintiff's  argument  regarding  the  attorney's certification and denied plaintiff's motion for Rule 11 sanctions.  "Attorney Ho made a mistake in interpreting the opposition that plaintiff expressed over the telephone as extending to a future motion of the same type filed on behalf of another MDOC employee, but the attorney's error was not 'fraudulent' as plaintiff contends."  (ECF No. 58, PageID.796).  Plaintiff's argument does not provide a basis for denying defendant Smith's motion for summary judgment.

---

[3] "MDOC's Policy Directive for Prisoner Grievances, 03.02.130(G)(3), specifically states that a 'grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer.' " *Johnson v. Allen*, No. 1:15-cv-1329, 2018 WL 1150021, at *2 (W.D. Mich. Mar. 3, 2018).  If plaintiff had filed a grievance against defendant Stevens corresponding to his claim against her in this lawsuit, if had it had been rejected as untimely, and if plaintiff had pursued it through a Step III decision, his claim against her would be properly exhausted.  *Id.*

Plaintiff argues that he needs more time to conduct discovery on the merits of his claims against defendant Smith.  (ECF No. 56, PageID.757).  Defendant Smith is seeking summary judgment based on the affirmative defense of plaintiff's failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a).  Plaintiff had an adequate opportunity to conduct discovery regarding the issue of exhaustion of administrative remedies.    Further, the MDOC grievance history filed on August 20, 2018, in connection with the motion for summary judgment by defendant Stevens showed that plaintiff did not pursue any grievance against MDOC defendants Stevens and Smith through a Step III decision before he filed his First Amended Complaint.  Plaintiff did not file a Rule 56(d) affidavit or declaration in support of this request and has not identified any specific discovery related to exhaustion of administrative remedies that he needs to complete in order to respond to defendant Smith's motion. *See Scadden v. Werner*, 677 F. App'x 996, 999-1000 (6th Cir. 2017).

There is no basis for denying or delaying the Court's consideration of defendant Smith's motion for summary judgment.  I find that plaintiff did not properly exhaust his claims against Deputy Warden Smith and Nurse Supervisor Stevens.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Court grant defendants' motions for summary judgment (ECF No. 26, 33, 51), and that the Court dismiss plaintiff's claims against defendants Smith and Stevens without prejudice.  I further recommend that the Court enter judgment in favor of defendants Holmes and

Ouellette on all plaintiff's claims.

Dated:   January 21, 2019                    /s/  Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).